UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>JORGE VAZQUEZ-RIVERA<br><br>Defendant | CRIMINAL 99-170 (CCC) |

### SENTENCING MEMORANDUM

TO THE HONORABLE SALVADOR E. CASELLAS
SENIOR UNITED STATES DISTRICT JUDGE
FOR THE DISTRICT OF PUERTO RICO

**COMES NOW**, defendant, JORGE VAZQUEZ-RIVERA, represented by the Federal Public Defender for the District of Puerto Rico and very respectfully states, alleges and prays as follows:

### I. INTRODUCTION

The above-captioned matter is before this Honorable Court for the re-sentencing of defendant Jorge Vazquez-Rivera. After having being found guilty by a jury on June 26, 2001 (Docket No. 180), this Honorable Court sentenced Mr. Vazquez-Rivera under the then mandatory sentencing guidelines to a term of imprisonment of 210 months and a supervise release term of three years. (Docket No. 265.) However, on May 18, 2005, the United States Court of Appeals for the First Circuit vacated Mr. Vazquez-Rivera's sentence and remanded the case for re-sentencing after finding that the sentence imposed did not comply with the pronouncements of the United States Supreme Court in <u>United States v.</u>

Booker, 125 S. Ct. 738 (2005) and that the government had failed to meet its burden of showing beyond a reasonable doubt that the Booker error was harmless. United States v. Vazquez-Rivera, 407 F.3d 476, 490 (1st Cir. 2005).

In view of the Supreme Court's decision in Booker, which mandates the imposition of a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2), Mr. Vazquez-Rivera now submits the following discussion and argument in support of his position that he should be re-sentenced in accordance to the principles set forth in Booker, to a non-guideline sentence. The sentence imposed at the very least should take into account the fact that Mr. Vazquez-Rivera's co-defendants, who had prior records, including the actual leader of the organization, received more lenient sentences simply because they pled guilty.

## II. PROCEDURAL BACKGROUND

On April 23, 1997, a grand jury sitting in this district returned an indictment charging a number of individuals with among other things a conspiracy to possess with intent to distribute narcotics. (See Criminal No. 97-082(SEC), Docket No. 2.) Subsequently, a superceding indictment was returned on December 17, 1997 naming additional co-defendants, including defendant Jorge Vazquez-Rivera, as participants in said conspiracy. (Id., Docket No. 444.) The defendant was arrested on December 23, 1997.

On July 14, 1999, the government moved to dismiss the superceding indictment against Mr. Vazquez-Rivera (Criminal No. 97-082(SEC), Docket No. 2325.) The Court granted the government's motion on July 15, 1999 (Id., Docket No. 2327), and judgment was entered on July 19, 1999. (Id., Docket No. 2333.) Notwithstanding, prior to the

dismissal of the superceding indictment in Criminal No. 97-082(SEC), a separate indictment had already been returned against four defendants, among which was Mr. Vazquez-Rivera. Said indictment was returned in the present case, Criminal No. 99-170 (SEC), on June 16, 1999. (Docket No. 1.) Mr. Vazquez-Rivera's initial appearance under the new indictment took place on July 28, 1999. (See Docket No. 9.) The case was assigned to the docket of the Honorable Carmen Consuelo Cerezo, United States District Judge.

Following procedural developments typical of any criminal prosecution,[1] Mr. Jorge Vazquez-Rivera's case was called for jury trial on June 12, 2001. (See Docket No. 166.) After a 10-day trial, the jury returned a verdict of guilty against Mr. Vazquez-Rivera. (Docket No. 180.) Even though Judge Cerezo presided over defendant's trial, the case was subsequently transferred to this Honorable Court for sentencing. The sentencing hearing in this case was held on May 31, 2002. (Docket No. 236.) This Court imposed a 210-month term of imprisonment with a supervise release term of 3 years. The defendant timely appealed. (Docket No. 266.)

On May 18, 2005, the First Circuit issued its opinion affirming defendant's conviction but vacating his sentence on the ground that the same had been imposed in violation to the principles established by the Supreme Court in its Booker decision. United States v. Vazquez-Rivera, 407 F.3d at 491. The appellate court remanded the case to this Court for re-sentencing. Id. The re-sentencing hearing of the defendant has been scheduled for

---

[1] Mr. Vazquez-Rivera's co-defendants Roberto Soto-Anadon, Carlos Silva-Galindo and David Muñiz-Gallego all plead guilty pursuant to plea agreements entered into with the government. (See Docket Nos. 135, 146, 149.)

September 30, 2005 before this Honorable Court. The defendant now respectfully submits the following

### III. ARGUMENT

A. <u>The State of the Law after Booker</u>

<u>United States v. Booker</u> is the culmination of a series of decision by the Supreme Court dealing with a criminal defendant's Sixth Amendment right in the context of sentencing. Those decisions are <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000); <u>Ring v. Arizona</u>, 536 U.S. 584 (2002); and <u>Blakely v. Washington</u>, 542 U.S. 296 (2004). All of these decisions anticipated a challenge to the constitutionality of the United States Sentencing Guidelines. <u>Booker</u> is comprised of two separate opinions: a substantive opinion and a remedial opinion.

In <u>Booker's</u> substantive opinion, per Justice Stevens, the Court reaffirmed its holding in the previous decisions that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." <u>Booker</u>, 125 S. Ct. at 756.[2] The mandatory nature of the Guideline regime is what implicated the Sixth Amendment right to a jury trial according to <u>Booker's</u> substantive opinion. <u>Booker</u>, 125 S. Ct. at 750. The substantive opinion further added:

> We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory

---

[2] The maximum lawful sentence is the sentence permitted by the jury verdict alone without further fact finding by the judge considering the definition of the term "statutory maximum" provided by the Court in <u>Blakely</u>: "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." <u>Blakely v. Washington</u>, 542 U.S. at ___ ; 124 S. Ct. 2531, 2537 (2004)(emphasis in original).

4

> range. Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the SRA the provisions that make the Guidelines binding on district judges; . . . . For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

Id. (citations omitted). The Court accordingly sought to remedy the constitutional violation brought about by a mandatory sentencing regime.

In Booker's remedial opinion, per Justice Breyer, the Court held that in order to implement the substantive opinion of the case, two specific provisions of the Sentencing Reform Act ("SRA") had to be severed and excised. Said provisions are 18 U.S.C. § 3553(b)(1) which made the application of the Guidelines mandatory and 18 U.S.C. § 3742(e), which sets forth the standard of review on appeal. Id. at 764. Except for the two severed and excised provisions, the SRA remained in effect, including 18 U.S.C. § 3553(a), which sets forth the factors that must now guide the sentencing court. Id. at 766.

Prior to the Booker decision, the factors set forth in 18 U.S.C. § 3553(a) were of uncertain import because judges were required to apply a sentence within the applicable guideline range unless the statutory standard for a departure was met. United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005). However, now, under Booker, the factors in § 3553(a) acquired new significance because sentencing courts are now under a duty to "consider" the Guidelines in conjunction with those factors. Id. Thus, because Booker did not discard the Guidelines altogether, the sentencing court will generally have to determine the applicable guideline range, including making the findings that would support the imposition of a guidelines sentence. But that same court may make findings justifying the imposition of a non-guideline sentence. Such fact-finding, absent the provision making the

guidelines mandatory, does not offend the Sixth Amendment, according to Booker. See United States v. Crosby, 397 F.3d at 112.

      B. The Applicable Penalty under the Guidelines

When this Honorable Court originally sentenced the defendant, it did so under a mandatory sentencing guideline regime and prior to the United States Supreme Court's decisions in Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 125 S.Ct. 738 (2005). Additionally, this Court adopted the recommendations of the Pre-Sentence Investigation Report ("PSR") which provided the following guideline calculation: defendant's base offense level was set at 32 under U.S.S.G. § 2D1.1 given the alleged finding that the offense involved more than five but less than 15 kilograms of cocaine; a two-point enhancement under U.S.S.G § 2D1.1(b)(1) for the alleged possession of a dangerous weapon during the offense; and a three-point enhancement under U.S.S.G. § 3B1.1(b) for defendant's alleged role as a manager or supervisor in the criminal activity involving five or more participants. Defendant's total adjusted offense level was thus set at 37, yielding an imprisonment range of between 210 and 262 months. The imprisonment range was adjusted to conform the ruling in Apprendi v. New Jersey, 530 U.S. 466 (2000) since the statutory maximum for the offense of which Mr. Vazquez-Rivera was found guilty of was 20 years. Therefore, the imprisonment range ended up being between 210 and 240 months.

After adopting the PSR's recommendation, and after making a finding that all of the enhancements suggested by the PSR were supported by evidence on the record, this Court sentenced Mr. Vazquez-Rivera to the lower end of the range, or 210 months. In doing so, the Court particularly found that all the evidence presented at trial supported the

findings that at least five kilograms of cocaine were attributable to the defendant, that it was reasonably foreseeable that the firearms mentioned in the case were also attributable to him and that the defendant was the administrator of the drug point. The Court also imposed a three-year supervise release term with which the defendant does not quarrel.

However, because this sentence was imposed under a mandatory sentencing guidelines regime and because it was imposed in violation to the rights guaranteed the defendant under the Sixth Amendment, the First Circuit has vacated defendant's sentence and has remanded the case for re-sentencing.

  C. <u>The First Circuit's Opinion</u>

On May 18, 2005, the Court of Appeals filed its decision in the case of <u>United States v. Vazquez-Rivera</u>, 407 F.3d 476 (1st Cir. 2005). In it, the appellate court affirmed defendant's conviction, but vacated the sentence imposed by this Court. <u>Id.</u> at 491. Among other things, the appeals court noted that Mr. Vazquez-Rivera's appeal was pending during the time the Supreme Court decided both <u>Blakely</u> and <u>Booker</u>. <u>Id.</u> at 487. Since the defendant had made an argument under <u>Apprendi</u> at the District Court level, the First Circuit concluded that defendant had preserved the <u>Booker</u> error for appellate review. <u>Id.</u> (citing <u>United States v. Antonakopoulos</u>, 399 F.3d 68, 76 (1st Cir. 2005)).

The First Circuit then went on to determine the applicable standard of review in the case. <u>United States v. Vazquez-Rivera</u>, 407 F.3d at 488. The appellate panel noted that the <u>Booker</u> Court "drew a distinction . . . between those cases in which the sentencing court erred only in applying mandatory Guidelines, and those with an underlying constitutional violation, in which the mandatory Guidelines sentence was based [at least] in part on facts not admitted by the defendant or found by a jury." <u>Id.</u> (citing <u>Booker</u>, 125

7

S.Ct. at 769). Since the Booker decision held that a case not involving a Sixth Amendment violation was reviewable under the harmless-error doctrine, Booker, 125 S.Ct. at 769, the defendant maintained that cases involving a Sixth Amendment violation must be automatically remanded. United States v. Vazquez-Rivera, 407 F.3d at 488. The First Circuit rejected said argument holding that harmless error review was applicable even to cases involving a Sixth Amendment violation. Id. However, the appellate panel agreed that in defendant's case there had been a Sixth Amendment violation within the meaning of Booker because neither the drug quantity, Mr. Vazquez-Rivera's role in the offense, nor his responsibility for the possession of a firearm by a co-conspirator were facts admitted by him or found by the jury. Id. Accordingly, the Court reviewed defendant's preserved Booker error for harmlessness.[3] Id. at 489.

As stated, the Booker error in Mr. Vazquez-Rivera's case was a constitutional error because in his case, a mandatory guidelines sentence was imposed on the basis of judge found facts and, thus, in violation to his Sixth Amendment rights[4] Id. (citing Booker, 125 S.Ct. at 756). Therefore, the government had the burden of proving beyond a reasonable doubt that the error did not affect the substantial rights of Mr. Vazquez-Rivera. United States v. Vazquez-Rivera, 407 F.3d at 489. The government did not do so. The First Circuit concluded that the government could not demonstrate beyond a reasonable doubt

---

[3] A harmless error is an error that does not affect the substantial rights of the defendant. See Fed. R. Crim. P. 52(a).

[4] The Court of Appeals distinguished between a Booker error consisting only of a sentence imposed under mandatory Guidelines and a sentence that is imposed under the mandatory regime and on the basis of judge-found facts. United States v. Vazquez-Rivera, 407 F.3d at 489. The former is not a constitutional error while the latter is. Id.

that the sentencing judge, in this case this Honorable Court, would have imposed the same sentence on defendant acting under an advisory Guidelines system. Id. at 490. Since the case was remanded "for resentencing under Booker," the court refused to entertain defendant's contentions that the facts found by this Court were insufficient to support the enhancements applied. Id. at 491. Finally, the First Circuit admonished that defendant's new sentence would be reviewed for reasonableness if defendant were to challenge the same in the future. Id.

    D. Applicable Law and Discussion

    *1. Sufficiency of the Facts Found in Support of Sentencing Enhancements*

Mr. Jorge Vazquez-Rivera has claimed his actual innocence since the inception of this case. Furthermore, at sentencing and on appeal, the defendant has attacked the sufficiency of the evidence presented at his jury trial in order to support the enhancements that were applied to him. Mr. Vazquez-Rivera submits that the record does not support a finding by a preponderance of the evidence of the facts supporting said enhancements. In fact, this Court must consider the First Circuit's observation that without the judge-made findings enhancing defendant's sentence in this case and in contravention to the Booker's substantive rule, the Guidelines sentencing range applicable to Mr. Vazquez-Rivera would have been ten to sixteen months. United States v. Vazquez-Rivera, 407 F.3d at 487 n.3. As Mr. Vazquez-Rivera has been incarcerated for more than 50 months already, the resulting sentence without the judge made findings would have been time served.

    (a) Drug Quantity

The evidence presented by the government, and consequently relied on by this Court in its finding of drug quantity is scanty at best. In fact, the issue of drug amount was

explored by the government at trial only through two of its witnesses and none of them could provide sufficient reliable testimony to establish an estimate of the actual drug amount attributable to the defendant. The finding as to drug quantity is critical because it set defendant's base offense level at 32.

For instance, the government relies on the testimony of Jose Borrero Feliciano who on June 13, 2001 testified that the Ceiba housing project drug point would sell an eighth of cocaine on a weekly basis during the years 1994 to 1996. (Trial Transcript of June 13, 2001, Docket No. 253 at 47-48.) After saying that said amount of cocaine was sold on a weekly basis, the witness then corrected himself and stated that said quantity was sold on a daily basis. (Id. at 48.) Nothing else from this witness is presented with respect to drug quantity.

The government also points to the testimony of Edwin Melendez-Negron. Mr. Melendez-Negron testified on June 14, 2001 that on **"approximately"** 20 occasions he sold and purchased one kilogram of cocaine to and from the defendant. (Trial Transcript of June 14, 2001, Docket No. 254 at 123.) Mr. Melendez-Negron was asked if he could recall the exact amount of kilos purchased from Mr. Vazquez-Rivera and the former replied that he could not recall the exact amount but that it was "**around maybe** 20, 25 occasions." (Id.) That is the extent of said witnesses' testimony with regards to the issue of drug quantity. No other testimony or evidence was presented by the government in an attempt to reliably demonstrate drug quantity, which the government knew was a necessary showing that needs to be made in order to enhance a defendant's sentence.

The evidence of record shows some other references to drug amount where the government unsuccessfully tried to establish an estimate of the drug amount attributable

to the defendant. For example, see the testimony of Alberto Negron-Constantino. Mr. Negron-Constantino testified on June 14, 2001 that in 1997, an eight of heroin was being purchased on a weekly basis to supply the drug points of Gandara, Bullones and Ceiba. (Trial Transcript of June 14, 2001, Docket No. 254 at 5.) However, the record shows that the drug amount referenced above was possessed and distributed during times in which the defendant had been removed as the alleged runner and administrator for the Ceiba point and that the witness was the one who took over. (Id.) In addition, there is the testimony of Yasmin Laracuente who on June 19, 2001 was asked whether she could state how much cocaine she sold at the Ceiba drug point on a weekly basis. (Trial Transcript of June 19, 2001, Docket No. 256, at 36.) Her answer to the question was: "I honestly don't remember." (Id. at 36.)

Mr. Vazquez-Rivera is mindful that this Honorable Court must make its determination of drug quantity acting upon **any reliable evidence** and by reference to a preponderance of said evidence. See United States v. Sklar, 920 F.2d 107, 113 (1st Cir. 1990); see also United States v. Eirby, 962 F.3d 31, 37 (1st Cir. 2001). Mr. Vazquez-Rivera also understands that under the preponderance of the evidence the amount need not be exact; "an approximation of drug quantity will be upheld 'as long as it represents a reasoned estimate.'" United States v. Huddleston, 194 F.3d 214, 224 (1st Cir. 1999)(quoting United States v. Webster, 54 F.3d 1, 5 (1st Cir. 1995)). But this Court must bear in mind that it is the government that has the burden of proving drug quantity, and while the sentencing court may choose between plausible estimates of drug quantity, it must "err on the side of caution." United States v. Marks, 365 F.3d 101, 105 (1st Cir. 2004)(quoting Sklar, 920 F.2d at 113).

Here, it is defendant's contention that even under the liberal preponderance of the evidence standard, the government has not met its burden of showing the drug quantity that would justify the setting of defendant's base offense level at 32. At sentencing, this Court stated that it took into account the totality of the evidence presented at trial and agreed with the PSR that at least five kilos was a conservative amount to hold the defendant accountable to. (Sentencing Transcript of May 31, 2002. Docket No. 278 at 20.) However, as shown, drug quantity was not reliably supported by a preponderance of the evidence. Therefore, defendant maintains that the base offense level of 32 was improperly applied.

(b) Weapon Enhancement

At sentencing, this Honorable Court found that it was 'reasonably foreseeable that the firearms mentioned in the record can be attributed to the defendant." (Sentencing Transcript of May 31, 2002. Docket No. 278 at 21.) And the defendant understands that the case law authorized the Court to make such a finding in applying the enhancement under U.S.S.G. § 2D1.1(b)(1). See, e.g., United States v. Casas, 356 F.3d 104, 129 (1st Cir. 2004); United States v. May, 343 F.3d 1, 7 (1st Cir. 2003); United States v. De Leon-Ruiz, 47 F.3d 452, 454 (1st Cir. 1995); United States v. Mena-Robles, 4 F.3d 1026, 1036 (1st Cir. 1993). However, this Honorable Court also expressed at sentencing the it had reviewed the transcripts and that "there is nothing linking this defendant directly with firearms." (Sentencing Transcript of May 31, 2002. Docket No. 278 at 17.)

Indeed, there is nothing from the record connecting Mr. Vazquez-Rivera to any firearm whatsoever. While there is some evidence that other persons involved in the criminal activity possessed firearms, the fact that the government was unable to link the

12

defendant to any weapon should be considered by this Court under the new sentencing regime in imposing a sentence that is sufficient but not greater than necessary. Said enhancement would undoubtedly overstate Mr. Vazquez-Rivera's culpability.

*2. Other Factors under 18 U.S.C. § 3553(a)*

Under the Supreme Court's decision in United States v. Booker, a court must look to 18 U.S.C. § 3553(a), and impose a sentence which is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in § 3553(a)(2). Booker, 125 S.Ct. at 764-65. In imposing sentence, the Court must also consider all of the factors set forth in § 3553(a)(1)-(7). The sentencing guidelines are no longer binding on the court. Id.

One district court in our circuit has eloquently put the role of the sentencing court under the now advisory sentencing regime. In United States v. Lewis, 375 F. Supp. 2d 1 (D. Mass. 2005), the court, per Senior District Judge Edward F. Harrington, stated the following:

> Although under Booker a sentencing judge is required to consult the Guidelines and to take them into account, the Guidelines merely constitute a generalized norm and are but one of the sentencing factors. Since all sentences relate to an individual human person, and not to a norm, a sentence must be shaped to the individual defendant involved in the particular crime by considering the individual sentencing factors. Thus, the Court in imposing an appropriate sentence shall follow the sentencing procedure set forth in Sisson[5], supra, by modifying the norm as influenced by its full examination of the individual defendant's personal characteristics, family responsibilities, medical and mental condition, criminal record and the particular circumstances surrounding the crime and

---

[5]United States v. Sisson, 326 F. Supp. 2d 203 (D. Mass. 2004).

13

> imposing a sentence within the range set by Congress, after deep reflection informed by its experience in life and in the law.

Id. at 3. The Guidelines should merely be considered as the starting point in this Court's analysis, without limiting its discretion to impose a sentence that is sufficient but not greater than necessary to achieve the goals of section 3553(a)(2). See United States v. Hadash, 408 F.3d 1080, 1082 (8th Cir. 2005)(citing United States v. Mashek, 406 F.3d 1012, 1014 n.4 (8th Cir. 2005))("The appropriate guidelines range, though now calculated under an advisory system, remains the critical starting point for the imposition of a sentence under § 3553(a)."); see also United States v. White, 405 F.3d 208, 219 (4th Cir. 2005). In other words, the court must not only look at the explicit text of the guidelines; it should evaluate their meaning and the resulting sentence in light of the purposes of sentencing established in 18 U.S.C. 3553(a). United States v. Pimental, 367 F. Supp. 2d 143, 145 (D. Mass. 2005); see also United States v. Ranum, 353 F. Supp. 2d 984, 985 (E.D. Wis. 2005)(noting that under Booker, sentencing courts must treat the guidelines as just one of a number of sentencing factors.).

Mr. Vazquez-Rivera asks that the court particularly consider two of the factors that it must now consider under 18 U.S.C. § 3553(a): the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1), and the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(7).

(a) History and Characteristics of the Defendant

With respect to the characteristics of the defendant, the Court should consider the fact that unlike all of the individuals charged in the instant case and who also happened

to receive more lenient sentences than him simply by the expedient of pleading guilty, Mr. Vazquez-Rivera had no criminal record. He had never been arrested prior to this case, let alone convicted of any crime. The evidence of record shows that petitioner was never involved in any violent act. The PSR also shows that upon the untimely death of his father when he was only 16 years old, the defendant took upon himself the responsibility of working in order to economically assist his family.

Also corroborated by the record is the fact that defendant is married and has had a stable marriage with his wife of six years. His wife supports him and hopes to be reunited with her husband in the near future. Defendant also received an education in the form of a Certificate of Technology in Automechanics which allowed him to be gainfully employed from September of 1988 until June of 2001 when the defendant was incarcerated. He worked for over 17 years with G.R. Transport, Inc., in Ponce and held the position of supervisor. It is noteworthy that even during the times in which he is alleged to have participated in a conspiracy to distribute narcotics, he remained employed. According to the President of the Company, Mr. Hector Golderos-Roig, the defendant was a responsible and excellent employee who maintained good relations with his co-workers. Mr. Golderos-Roig has stated that he is willing to employ defendant upon his release from custody. The defendant respectfully requests that these facts be considered in the application of a non-guideline sentence.

(b) The Need to Avoid Unwarranted Sentencing Disparities

Finally and importantly, Mr. Vazquez-Rivera submits to the Honorable Court that the imposition of a non-guideline sentence is necessary to avoid an unwarranted disparity

between the sentences imposed on Mr. Vazquez-Rivera's co-defendants and the sentence imposed on him.  Section 3553(a)(6) provides in relevant part that in imposing sentence the court needs to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); see also United States v. Higdon, 418 F.3d 1136 (11th Cir. 2005)(explaining that one of the main goals of the Sentencing Reform Act of 1984 was to reduce unwarranted sentencing disparities and that even after Booker, the district court must still be guided by section 3553(a)(6) in achieving this goal.)

Simply put, as a matter of fairness, defendant's sentence of a 210-month term of imprisonment cannot stand when compared to the sentences imposed on his co-defendants who pled guilty.  For example, co-defendant David Muniz-Gallego received a sentence of 24 months in prison. (Docket No. 197.) Co-defendant Carlos E. Silva-Galindo, who was named in two other counts in the indictment, including the charge of being a felon in possession of a firearm, was sentenced to 87 months in prison. (Docket No. 224.) Significanlty, co-defendant Roberto H. Soto-Anadon, whom the evidence clearly identifies as the owner of the drug points and the leader of the organization, was sentenced to a term of imprisonment of 120 months. (Docket No. 207.)  Yet, the defendant was sentenced and stands again to be re-sentenced, to a term of 210 months in prison unless the Court imposes a sentence outside of the guideline range.

Unlike co-defendants Soto-Anadon and Silva-Galindo, Mr. Vazquez-Rivera had no prior criminal record.  Nevertheless, the defendant was imposed and stands to receive a harsher sentence simply because he invoked his constitutional right to a trial by jury

16

instead of negotiating a deal with the government. This is a factor that this Court must consider in imposing a sentence on defendant for otherwise a miscarriage of justice would occur.

At the original sentencing of Mr. Vazquez-Rivera, this Court understood, correctly, that this argument, which was also advanced at sentencing by defendant, could not be considered by the Court given the state of the law at the time. Specifically, this Court stated

> That is not before the court, I cannot accept that proposition. He was found guilty by a jury, again let me review what my role is here, I am a sentencing judge, he has been found guilty by a jury, I have to apply the guidelines and that is it, if there were other persons that pled or not or so forth, it is really irrelevant. He has been found guilty to that count and I have to apply whatever the guidelines and the statute disposes and within those guidelines I do have some discretion, very limited as you know, but that is it. So we are not here — I cannot depart. There are no grounds what so ever [sic] here for departure.

(Sentencing Transcript of May 31, 2002. Docket No. 278 at 11-12.) This Court also stated: "Fine, but let's stick to the point, because the other issue is irrelevant, I cannot not apply the guidelines because somebody made a plea agreement." (Id. at 12.)

Obviously, this Honorable Court's remarks reflect the state of the law at a point in time in which sentencing courts were constrained by mandatory sentencing guidelines and arguments like the one presented here could not be considered by the Court. However, after Booker, the Court is free to consider the argument in imposing what it understands is a fair sentence on the defendant. The obstacle that prohibited this Honorable Court from considering the issue has been removed. Thus, the defendant respectfully prays that this

Honorable Court take into consideration the disparity between the sentences of co-defendants, among whom the Court can find the leader of the organization and individuals with prior criminal records, and that of the defendant in this case. Mr. Vazquez-Rivera respectfully requests that the Court impose a non-guideline sentence at the very least not exceeding the harshest term of imprisonment imposed on his co-defendants.

## IV. CONCLUSION

In view of the foregoing, it is respectfully requested that the Honorable Court impose a sentence on Mr. Vazquez-Rivera outside the guideline calculation contained in the PSR and, at the very least, not greater than the term of imprisonment imposed on the leader of the criminal organization.

**WHEREFORE**, it is respectfully requested that the Honorable Court take notice of the present sentencing memorandum and that the defendant be applied a non-guideline sentence.

**I HEREBY CERTIFY** that on this date I electronically filed the present memorandum with the Clerk of Court using the CM/ECF system which will sent electronic notification of said filing to: the United States Attorney's Office, District of Puerto Rico (Attn: AUSA Sonia Torres).

RESPECTFULLY SUBMITTED

In San Juan, Puerto Rico, this 23rd day of September, 2005.

**JOSEPH C. LAWS, JR.**
Federal Public Defender

        ***S/Carlos A. Vazquez-Alvarez***
        Carlos A. Vazquez-Alvarez
        First Assistant Federal Public Defender
        USDC-PR 206903
        241 F.D. Roosevelt Ave.
        Hato Rey, P.R. 00918-2441
        (787) 281-4922/ Fax (787) 281-4899
        E-mail: Carlos_Vazquez@fd.org

        ***S/Hector L. Ramos-Vega***
        Hector L. Ramos-Vega
        Research & Writing Specialist
        USDC-PR 222504
        241 F.D. Roosevelt Ave.
        Hato Rey, P.R. 00918-2441
        (787) 281-4922/ Fax (787) 281-4899
        E-mail: Hector_Ramos@fd.org